UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PETER STROJNIK, SR.,

Plaintiff,

v.

ROSS STORES, INC., *et al.*,

Defendants.

Case No. 1:22-cv-00533-KES-CDB

FIRST SCREENING ORDER REQUIRING A RESPONSE FROM PLAINTIFF

(Doc. 1)

**30-DAY DEADLINE**

Plaintiff Peter Strojnik, Sr. ("Plaintiff"), proceeding pro se and *in forma pauperis*, initiated this action with the filing of a complaint on May 4, 2022. (Doc. 1). On May 5, 2022, non-party Philip H. Stillman filed a notice of lien, attaching a copy of a final judgment entered in *Peter Strojnik, Sr. v. 1017 Coronado, Inc.*, No. 19-cv-02210-BAS-MSB, an action in the Southern District of California. Mr. Stillman's filing purports to establish that Plaintiff owes $20,545.00 to satisfy attorney's fees as granted by the Southern District of California. *See* (Doc. 4).

I.     **Screening Requirement**

As to the status of the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), federal courts must screen *in forma pauperis* complaints and dismiss any case that is "frivolous or malicious," "fails to state a claim on which relief may be granted" or seeks monetary relief against an immune defendant. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (*en banc*) ("[S]ection 1915(e) not only permits but requires a district court to dismiss an [IFP] complaint that fails to state a claim."); *see also id.* at 1129 ("section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners.").

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief…" Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *See Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Pleadings by self-represented litigants are to be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). However, "the liberal pleading standard … applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n .9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted).

## II.    Plaintiff's Allegations[1]

In the operative complaint,[2] Plaintiff asserts three claims for relief, including: disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (count two), and violation of California's Unruh Civil Rights Act ("Unruh Act") (count three). As a third claim, Plaintiff asserts "Declaratory Relief: Pre-Emption," wherein he provides that the Unruh Act's procedural requirements aimed at limiting suits by disabled individuals are preempted by the ADA (count one). (Doc. 1 at 10-12).

Plaintiff alleges that he is a disabled individual and encountered barriers at Defendant Ross Stores, Inc.'s ("Ross") retail locations in Bakersfield and El Centro, California. *See id.* Plaintiff alleges that he has "has a missing right knee, spinal stenosis, long Covid 19 [sic][,] pulmonary embolism, pleurisy, arthritis, and carpal tunnel." He asserts the effects of his missing right knee,

---

[1] References herein to the complaint cite the CM/ECF-assigned page number.

[2] The undersigned accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

as well as spinal stenosis and pulmonary embolism, "have been mitigated with a prosthetic knee, nerve blocking and medications, respectively." *Id.* at 2.

Plaintiff alleges that certain retail locations operated by Defendant Ross and visited by Plaintiff violate the ADA due to varied combinations of the following factors: length and content of service counters, width of accessible routes between displays, bathroom door push-pull forces, bathroom door operation requiring twisting of the wrist, and closing time of the bathroom door. *Id.* at 6-10. These retail locations are as follows: DD's Discounts, 3761 Ming Avenue, Bakersfield, California (visited March 18, 2022); DD's Discounts, 1505 White Lane, Bakersfield, California (visited March 18, 2022); Ross Dress for Less, 5253 Gosford Road, Bakersfield, California (visited March 18, 2022); Ross Dress for Less, 3761 Ming Avenue, Bakersfield, California (visited March 18, 2022); DD's Discounts, 528 East Danenberg Drive, El Centro, California (visited April 26, 2022); and Ross Dress for Less, 576 East Danenberg Drive, El Centro, California (visited April 26, 2022). *Id.* at 6-10.

Specifically, Plaintiff alleges service counters are not 36 inches long and are cluttered, making Plaintiff's "use of the payment counter more difficult for Plaintiff to use [sic]," and "violating accessibility standards at 904.4.1." *Id.* at 6, 8-9. Plaintiff asserts that the width of accessible routes is less than 36 inches between displays of merchandise and in the hallways leading to restrooms, which "makes it more difficult for Plaintiff to move between displays of merchandise," violating "accessibility standards at 403.5.1." *Id.* at 6-10. Plaintiff alleges that the bathroom doors require a push-pull force of greater than five pounds, which "makes it more difficult for Plaintiff to open the door," violating "accessibility standards at 309.4.2." *Id.* at 6-10. Plaintiff asserts that the "operable part of the bathroom door requires the twisting of the wrist to operate," which "makes it more difficult for Plaintiff to open the door," violating the "accessibility standards at 309.4." *Id.* at 8-10. Separately, Plaintiff alleges that the "closing time of the bathroom door is not adjusted to allow for a [five] second closing time," which "makes it more difficult for Plaintiff to navigate through the door," violating "accessibility standards at 404.2.8.1." *Id.* at 6, 9-10.

Plaintiff alleges that he "will return to the Facilities to conduct business there only once he has been assured that the Facilities are accessible. Plaintiff is currently deterred from doing so

because of the existing barriers [sic]." *Id.* at 10.  Plaintiff seeks damages under the Unruh Act, declaratory and injunctive relief, and attorney's fees and costs.  *Id.* at 12-13.  The complaint is signed and dated May 2, 2022.  *Id.* at 13.

**III.    Discussion**

    **A.     Preemption**

        **1.     Governing Law**

"It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). "A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Id.*

"When a suit is initiated against a state official to challenge a state law as preempted by federal law, jurisdiction is proper under *Shaw* because the preemption question is one that directly concerns the state's power to legislate in a manner inconsistent with some federal mandate." *California Shock Trauma Air Rescue v. AIG Domestic Claims, Inc.*, No. 2:09-cv-00759MCEJFM, 2009 WL 2230772, at *4 (E.D. Cal. July 24, 2009), *aff'd sub nom. California Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538 (9th Cir. 2011).

        **2.     Analysis**

Plaintiff asserts that 28 C.F.R. 36.103 preempts the "rights, remedies and procedures of Unruh laws that provide lesser or unequal protection for the rights of individuals with disabilities," including the Unruh Act's procedural requirements. (Doc. 1 at 11; emphasis omitted).  Numerous courts have rejected Plaintiff's argument.  *See Brooke v. 421 S Milpas LLC*, No. 2:25-cv-03606-ODW (AGRX), 2025 WL 1722099, at *6 (C.D. Cal. May 12, 2025) (citing cases).

28 C.F.R. 36.103(c) provides that "[t]his part does not invalidate or limit the remedies, rights, and procedures of any other Federal laws, or State or local laws (including State common law) that provide greater or equal protection for the rights of individuals with disabilities or individuals associated with them."  28 C.F.R. § 36.103(c).  § 36.103(c) does not "deal with state

4

law provisions such as the Unruh Act.  Rather, it is a bar as to the ADA's limiting the remedies or rights or procedures of any other Federal, State or local law.  The words 'this part' refers to 28 C.F.R. Part 36 not to any state law." *Brooke v. Sapphire Invs. LLC*, No. CV 22-4692-GW-RAOX, 2022 WL 18397389, at *1 (C.D. Cal. Nov. 9, 2022).

Plaintiff does not cite to any authority for the proposition that 28 C.F.R. 36.103(c) preempts state law and the Court cannot locate any.  *See Brooke v. 247 Hotels Beverage LLC*, No. 2:22-cv-02941-MCS-E, 2022 WL 3640227, at *5 (C.D. Cal. July 7, 2022) ("Instead, courts have observed that the regulation recognizes that state laws are not preempted.").

Thus, the undersigned finds that Plaintiff's preemption claims are without merit.  *See Sapphire*, 2022 WL 18397389, at *1 ("Thus, state legislatures (such as the one in California) are free to enact their own disability laws which can be more generous or less generous than their Federal counterpart without giving rise to any preemption concern.").  Additionally, Plaintiff's preemption claims are unnecessary: if the Court exercises supplemental jurisdiction over the Unruh Act claims, federal procedural rules will apply and he will not be required to comport with "heightened" state procedural requirements.  *See Gastelum v. Five Below, Inc.*, No. 1:22-cv-00825AWI-SAB, 2022 WL 6224274, at *9–10 (E.D. Cal. Oct. 7, 2022), *report and recommendation adopted*, No. 1:22-cv-00825-AWI-SAB, 2023 WL 159577 (E.D. Cal. Jan. 11, 2023) ("Moreover, the argument is unnecessary here.  In federal court, federal procedural law (and thus federal pleading requirements) are applied; therefore, if the Court elects to exert supplemental jurisdiction over Plaintiff's Unruh claim, he is not required to comply with the 'heightened' state procedural requirements … Plaintiff's prayer for equitable relief … is similarly misplaced.").

**B.    American with Disabilities Act ("ADA")**

**1.    ADA Governing Law**

The ADA was enacted in response to a "compelling need" for a "clear and comprehensive national mandate" to eliminate discrimination against disabled individuals.  *PGA Tour, Inc. v. Martin*, 532 U.S. 557, 577 (2009). "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)." *Id*. Title III

5

of the ADA prohibits discrimination against persons with disabilities and provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA requires business facilities be "readily accessible to and usable by individuals with disabilities," unless it would be "structurally impracticable." 42 U.S.C. § 12183(a)(1); *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903, 905 (9th Cir. 2011). "In general, a facility is readily accessible to and usable by individuals with disabilities if it meets the requirements promulgated by the Attorney General in the 'ADA Accessibility Guidelines,' or the 'ADAAG.'" *Oliver*, 654 F.3d at 905. These standards are codified at 28 C.F.R. Pt. 36, Appendix A, and are "essentially an encyclopedia of design standards." *See id.*

For purposes of Title III, discrimination also includes "a failure to remove architectural barriers … in existing facilities … where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv).

The Ninth Circuit has articulated the elements of an ADA discrimination claim as follows:

> To prevail on a Title III discrimination claim, the plaintiff must show that (1) she is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability.

*Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007). A plaintiff need not show intentional discrimination to establish an ADA violation. *Lentini v. California Ctr. for the Arts, Escondido*, 370 F.3d 837, 846 (9th Cir. 2004).

**2. ADA Standing**

A court's jurisdiction "is to be assessed under the facts existing when the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4 (1992). Consequently, "[t]he requisite personal interest"—standing—"must exist at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 214 (2000) (citation omitted); *see Langer v. Kiser*, 57 F.4th 1085, 1098 (9th Cir. 2023) ("standing ordinarily depends on the facts that

6

exist at the time the complaint is filed") (internal quotation and citation omitted); *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 850 (9th Cir. 2007) (the court "must consider the facts as they existed at that time the complaint was filed").

To show standing, a plaintiff "must demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the [defendant's] action, and that the injury can be redressed by a favorable decision." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (en banc). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent' not 'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560 (internal citations omitted). An injury is "concrete and particularized" when a plaintiff suffers discrimination due to architectural barriers at a public accommodation and those barriers have deterred plaintiff from returning. *Doran v. 7-Eleven*, 524 F.3d 1034, 1041 (9th Cir. 2008).

A plaintiff suffers an "actual and imminent" injury under the ADA when he alleges "(1) that he visited an accommodation in the past; (2) that he was currently deterred from returning to the accommodation because of ADA violations; and (3) that he would return if the ADA violations were remedied." *Doran*, 524 F.3d at 1041 (citing *Molski v. Arbys Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005)). For standing purposes, an ADA plaintiff must allege sufficient facts to demonstrate that an accessibility barrier "interfere[s] with [his] 'full and equal enjoyment' of the facility" in question. *Chapman*, 631 F.3d at 947 (quoting 42 U.S.C. § 12182(a)). A barrier amounts "to such interference if it affects the plaintiff's full and equal enjoyment of the facility on account of his particular disability." *Id.*

The ADAAG "establish[ ] the technical standards required for 'full and equal enjoyment.'" *Id.* If a barrier violating the ADAAG standards "relates to a plaintiff's disability, it will impair the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element." *Id.*

### 3. Analysis

Upon preliminary screening of the complaint, it appears Plaintiff sufficiently alleges that he is disabled within meaning of the ADA as Plaintiff states that he has "a missing right knee, spinal stenosis, long Covid 19 [sic][,] pulmonary embolism, pleurisy, arthritis, and carpal tunnel" and that

these ailments "substantially limit major life activities." (Doc. 1 at 2). Plaintiff also sufficiently alleges that Defendant Ross is a private entity that owns, operates, or leases DD's Discounts and Ross Dress for Less retail locations. *Id.* at 2. Thus, the first two factors to state a Title III ADA claim are sufficiently alleged. *Molski*, 481 F.3d at 730.

Plaintiff asserts that he personally visited the Defendant Ross' retail locations and encountered barriers there that made it more difficult for him to access the public accommodations offered. (Doc. 1 at 6-10). Though Plaintiff's assertions as to the particulars of the difficulties he experienced are sparse, that Plaintiff suffered injury in fact is sufficiently alleged. *See Gastelum v. Five Below, Inc.*, No. 1:22-cv-00825-AWI-SAB, 2022 WL 6224274, at *6 (E.D. Cal. Oct. 7, 2022), *report and recommendation adopted*, No. 1:22-cv-00825-AWI-SAB, 2023 WL 159577 (E.D. Cal. Jan. 11, 2023) (finding sufficient injury in fact where plaintiff alleged inadequate width of routes in store presented barrier due to his wheelchair, that the push-pull force on the bathroom door made it more difficult to open from his wheelchair, and the door mechanism requiring twisting of the wrist made it more difficult to open the door).

However, the undersigned finds Plaintiff has failed to adequately allege deterrence or an intent to return and, therefore, has failed to establish a sufficient future injury. "Federal district courts within the Ninth Circuit have explained in several persuasive orders what plaintiffs must allege (and later prove) to show that barriers deter them from visiting a public accommodation." *Escobedo v. El Rinconcito Mexican Grill, LLC*, No. 1:24-cv-01457 JLT SKO, 2026 WL 1266253, at *4 (E.D. Cal. May 8, 2026) (citing cases). "A recurring theme in these decisions is the general rule of federal pleading, i.e., that a complaint must be more than 'conjectural' or 'hypothetical' and must include more than a 'formulaic recitation' of the relevant legal standard. A plaintiff cannot simply state that he is deterred and will return if a barrier is removed." *Id.* (citations omitted).

Plaintiff asserts just such a formulaic recitation. He states that he "will return to the Facilities to conduct business there only once he has been assured that the Facilities are accessible. Plaintiff is currently deterred from doing so because of the existing barriers." (Doc. 1 at 10). Plaintiff provides no other assertions in support of his deterrence or intent to return. Such an allegation is insufficient. Additionally, the address on Plaintiff's complaint lists his place of

residence as Phoenix, Arizona, a distance of approximately 480 miles from Bakersfield, California. (Doc. 1 at 1).  Plaintiff does not set forth, for example, that the stores possess unique products, are conveniently located on the way to other shops he frequents, or any other reasoning to support his general statements.  *See Gastelum v. Stephen's Chicken, LP*, No. 25-cv-1459 JLS (LR), 2026 WL 734338, at *4 (S.D. Cal. Mar. 16, 2026) ("Here, Plaintiff lives 231 miles away from the place of public accommodation owned by Defendant.  Because Plaintiff lives so far away, Plaintiff must 'demonstrate' his intent to return to the geographic location and his desire to visit the Restaurant once it becomes ADA-compliant.") (citation omitted); *Gastelum v. Kohl's Inc.*, No. 1:21-cv-01740-JLT-BAM, 2024 WL 1020480, at *11 (E.D. Cal. Mar. 8, 2024), *report and recommendation adopted*, No. 1:21-cv-1740 JLT BAM, 2024 WL 1304607 (E.D. Cal. Mar. 26, 2024) ("A plaintiff must allege more, such as frequency of travel to a region or concrete travel plans, to support a determination that he is deterred from a return due to the alleged barriers."); *see also Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1341 (E.D. Cal. 2020) ("Mere conclusory assertions that an ADA plaintiff intends to return and is deterred from returning to a place are insufficient."); *id.* at 1341 n.3 ("It should be noted that even though the Ninth Circuit has distinguished two theories (intent to return theory and deterrent effect doctrine) for establishing 'real and immediate threat of repeated injury,' both nonetheless require *sufficient* allegations showing that an ADA plaintiff would likely return to the location at issue.") (emphasis in original).

Thus, because Plaintiff's allegations undermine that he was or is deterred from returning to Defendant Ross' stores because of ADA violations and that he would return if the ADA violations were remedied, Plaintiff fails to adequately plead standing to bring an ADA claim based on Defendant Ross' alleged violations.  *See Escobedo*, 2026 WL 1266253, at *5 (finding plaintiff "offers only a boilerplate statement: he 'enjoys the goods and services offered at the Facility, and will return to the Facility once the barriers are removed.'  His allegations are indistinguishable from the generalized professions of intent that the Supreme Court found wanting in *Lujan*.  They do not suffice to show Escobedo has standing to assert a claim under the ADA.") (citations omitted); *see Lujan*, 504 U.S. at 564 ("And the affiants' profession of an 'inten[t]' to return to the places they had visited before … is simply not enough.  Such 'some day' intentions—without any description

9

of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.") (alterations in original).

Therefore, the undersigned finds Plaintiff has failed establish standing to plead an ADA claim against Defendant Ross.

### C.    Unruh Act

#### 1.    Governing Law

Count  three asserts a claim under the Unruh Act predicated on the ADA violation asserted in count two of Plaintiff's complaint.  "The Unruh Act has been described as 'coextensive with the ADA,' and in the disability context, 'operates virtually identically to the ADA.'"  *Arafiles v. Safeway, Inc.*, No. 2:24-cv-02801-TLN-SCR, 2025 WL 457834, at *2 (E.D. Cal. Jan. 27, 2025) (citing *Molski*, 481 F.3d at 731).  "As the Unruh Act allows for monetary damages, 'litigants in federal court in California often pair state Unruh Act claims with federal ADA claims.'"  *Id.*; *see Williams v. Amazone.com Inc.*, No. 2:20-cv-513-JDP PS, 2020 WL 5909060, at *1 (E.D. Cal. Oct. 6, 2020) ("[A]ny violation of the ADA necessarily constitutes a violation of the Unruh Act.").

Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The Ninth Circuit has concluded that ADA and Unruh Act claims that derive from a common nucleus of operative fact "form part of the 'same case or controversy' for purposes of § 1367(a)."  *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

However, even where supplemental jurisdiction over a claim exists under § 1367(a), the Court may decline jurisdiction over the claim if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

§ 1367(c)(1)-(4).

Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances of the case are exceptional within the meaning of § 1367(c)(4)." *Id.* (citations and internal quotation marks omitted). "Second, in determining whether there are compelling reasons for declining jurisdiction in a given case, the court should consider what best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]." *Id.* (citations and internal quotation omitted).

After considering § 1367(c)(4) and California's requirements for bringing Unruh Act claims, "numerous district courts in California 'have declined to exercise supplemental jurisdiction over Unruh Act . . . claims brought alongside ADA claims.'" *Block v. Cal.-Fresno Invest. Co.*, No. 1:22-cv-1419 JLT SAB, 2023 WL 8675398, at *4 (E.D. Cal. Dec. 15, 2023) (quoting *Rutherford v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at *1 (C.D. Cal. Apr. 1, 2021)). Underlying these decisions is "the recent confluence of several California-law rules [that] have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases that clearly threatens to have a significant adverse impact on federal-state comity." *Arroyo*, 19 F.4th at 1211.

Notably, Congress adopted the ADA to address the discrimination encountered by persons with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief. *See id.* at 1205 (discussing background and relief available under the ADA). And the Unruh Act likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh Act allows a plaintiff to recover "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars." Cal. Civ. Code § 52(a).

In response to perceived abuses of the Unruh Act, California has enacted requirements for bringing such claims, which requirements the Ninth Circuit has assumed, without deciding, "apply only in California state court." *Vo v. Choi*, 49 F.4th 1167, 1170 (9th Cir. 2022). For example,

11

provisions were added (1) regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation").

All of these requirements[3] apply to claims alleging a construction-related accessibility violation, defined as involving "a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities," including those related to the ADA. Cal. Civ. Code § 55.52(a)(1), (6); *see* Cal. Civ. Code § 55.3(a)(2). By enacting such restrictions, California has expressed a "desire to limit the financial burdens California's businesses may face from claims for statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted). However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." *Id.* at 1213 (internal quotation omitted). Consequently, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." (*Id.*)

The Ninth Circuit has provided substantial guidance on this issue in *Vo v. Choi* in affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under § 1367(c)(4). *Vo*, 49 F.4th at 1168. In that case, the district court declined supplemental jurisdiction over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the merits of the case. *Id.* at 1168-69. In reviewing the district court's decision, the Ninth Circuit held that the district court sufficiently explained why the circumstances of the case were exceptional under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and 'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's procedural requirements by bringing their claims in federal court." *Id.* at 1171. The Court also

---

[3] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience, fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined that the values of fairness and comity favored not retaining jurisdiction over the claim." *Id.* at 1172. Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of review, [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in determining there were compelling reasons to decline jurisdiction over the Unruh Act claim." *Id.*

With these legal standards in mind, the Court addresses whether the relevant considerations of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh Act claim, assuming Plaintiff adequately remedies in an amended complaint the above-noted deficiencies in the pleading of his ADA claim.

**2.     Analysis**

The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether the circumstances here are exceptional. *Vo*, 49 F.4th at 1171.

As discussed above, California has enacted various requirements that apply to claims alleging a construction-related accessibility violation. And if the Court were to exercise jurisdiction over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements. *See Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met exceptional-circumstances prong of § 1367(c)(4)). Further, such evasion would undermine California's policy interests in enforcing its requirements—providing monetary relief but limiting burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary settlements at the expense of forward-looking relief that might benefit the general public." *Id.* Plaintiff fails to articulate in his complaint any basis for why such circumstances should not be deemed exceptional, and there is "little doubt that the first prong [under § 1367(c)(4)] is satisfied here." *Vo*, 49 F.4th at 1171.

Turning to the second part of the inquiry—whether there are other compelling reasons for declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness, and comity. *Vo*, 49 F.4th at 1171. Importantly, this case is an early stage of the litigation—no

Defendant has appeared, discovery has not commenced and Plaintiff's ADA/Unruh Act claims have not been fully resolved. *See Arroyo*, 19 F.4th at 1214 (noting that the *Gibb*'s values did not support declining supplemental jurisdiction where the case was at a "very late stage"); *Block v. Arsh & Jot LLC*, No. 1:24-cv-0812 JLT SAB, 2024 WL 5195915, at *5 (E.D. Cal. Dec. 23, 2024) (same). Thus, this is not a case "where it makes no sense to decline jurisdiction . . . over a pendent state law claim that that court has effectively already decided." *Id.*

Moreover, in light of the above discussion of California's requirements for Unruh Act claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim to proceed without the state court being able to enforce its policy interests as reflected in its various procedural requirements. *Id.* at 1213 (noting "comity-based concerns that California's policy objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act claims in Federal court). Although it is unclear at this stage whether Plaintiff constitutes a "high-frequency litigant," the Court notes it need not determine whether he is in fact a high-frequency litigant. *Vo*, 49 F.4th at 1174 (noting that court was not required to determine whether the plaintiff was in fact a high-frequency litigant). Likewise, notwithstanding that this action is in the Eastern District of California, the Court notes it need only determine whether California's requirements are implicated, not whether they are in fact met. As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading requirements" imposed in California is a question for the state court because "[f]orcing the district court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values—especially comity," and would deprive California of playing its "critical role in effectuating the policies underlying [its] reforms." *Vo*, 49 F.4th at 1173-74 (internal citation omitted).

Accordingly, in light of the two-step inquiry under § 1367(c)(4), the Court concludes that the circumstances of this case are exceptional and there are other compelling reasons to decline supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims. *See, e.g.*, *Orosco v. Monrroy Enters. LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal. Nov. 30, 2023) (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's California Unruh Act, Disabled Persons Act, Health & Safety Code and negligence claims

14

following *Vo/Arroyo* analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL 17080182, at *5 (C.D. Cal. Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx, 2022 WL 20273588, at *3 & n.3 (C.D. Cal. July 18, 2022) (same).

Because Plaintiff may be able to remedy his pleadings to demonstrate that exceptional circumstances do not warrant declining supplemental jurisdiction over Plaintiff's Unruh Act and related state law claims or that other compelling reasons favor exercising supplemental jurisdiction, Plaintiff will be afforded an opportunity to amend his pleading. However, if Plaintiff chooses to replead his ADA and Unruh Act claims but fails to articulate adequate grounds warranting the Court's exercise of supplemental jurisdiction, the undersigned will recommend against exercising jurisdiction over Plaintiff's Unruh Act claims.

\*    \*    \*    \*    \*

In sum, Plaintiff has failed to sufficiently plead any cognizable claims under federal law. Notwithstanding the foregoing, under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court should freely give leave [to amend] when justice so requires." Accordingly, the Court will provide Plaintiff leave to amend his complaint only to the extent he can, in good faith, remedy the deficiencies noted herein. *Lopez*, 203 F.3d at 1126-31. Alternatively, Plaintiff may choose not to amend and, instead, file a notice of voluntary dismissal.

If Plaintiff elects to proceed with this action by filing an amended complaint, he is advised that the Court cannot refer to a prior pleading in order to make an amended complaint complete. *See* Local Rule 220. The amended complaint must be complete in itself without reference to the prior or superseded pleading. Once the amended complaint is filed, the original pleading no longer serves any function in the case. Thus, in the amended complaint, Plaintiff must re-plead all elements of his claims, including all relevant facts, even the ones not addressed by this screening order.

If Plaintiff elects to proceed on his original complaint without amendment, the undersigned will recommend to the assigned district judge that the complaint be dismissed for the reasons set forth above.

///

15

## IV.   Conclusion and Order

Based upon the foregoing, it is HEREBY ORDERED that:

1. Plaintiff is granted leave to amend his complaint.

2. **Within 30 days** from the date of service of this order, Plaintiff must file either:

   a.   an amended complaint curing the deficiencies identified by the Court in this order; *or*

   b.   a notice of intent to proceed on the original complaint without amendment, after which the undersigned will recommend the complaint be dismissed; *or*

   c.   a notice of voluntary dismissal.

**If Plaintiff fails to comply with this order, the undersigned will recommend that this action be dismissed for failure to obey the Court's orders and failure to prosecute.**

IT IS SO ORDERED.

Dated:   **June 2, 2026**   _____

UNITED STATES MAGISTRATE JUDGE

16